IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **JAMES N. HUTCHERSON, JR., et al.,** | * | |
| | * | |
| Plaintiffs | * | |
| | * | |
| v. | * | Civil Case No. 08-3044-RWT |
| | * | |
| **WASHINGTON METROPOLITAN** | * | |
| **AREA TRANSIT AUTHORITY, et al.,** | * | |
| | * | |
| Defendants | * | |

**MEMORANDUM OPINION**

Plaintiffs James and Sharon Hutcherson filed this civil action in the Circuit Court for Prince George's County, Maryland, against Defendants Washington Metropolitan Area Transit Authority ("WMATA") and Chae Y. Lim on October 21, 2008. WMATA then removed the action to this Court on November 13, 2008, under § 81 of the WMATA Compact, which grants United States District Courts original jurisdiction over civil actions implicating WMATA.

Plaintiffs seek relief for personal injury arising out of a routine traffic stop involving a WMATA transit police officer. They allege negligence, assault, intentional infliction of emotional distress, false imprisonment, loss of consortium, and vicarious liability in connection with the traffic stop against both WMATA and the transit officer. Plaintiffs also seek redress against WMATA on grounds of negligent hiring, supervision, and training of the officer responsible for the challenged conduct.

Defendant WMATA has moved to dismiss Plaintiffs' Complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction or, in the alternative, under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

## I. FACTS

On September 27, 2007, Plaintiff James Hutcherson parked his vehicle in a handicapped space outside of the Largo Metro Station in Prince George's County, Maryland, while waiting for his wife co-Plaintiff Sharon Hutcherson to arrive. Because Plaintiff's vehicle's license plate did not display a handicapped symbol or decal, WMATA transit police officer Defendant Lim approached to inquire as to why Mr. Hutcherson was parked in that spot. When Officer Lim notified Mr. Hutcherson that he was parked illegally, Mr. Hutcherson presented him with a valid handicapped permit, which had been hanging from the car's rear view mirror, but which Officer Lim had been unable to see due to Mr. Hutcherson's vehicle's tinted windows.

Officer Lim thus informed Mr. Hutcherson that he was properly parked in a handicapped space, but that his vehicle's windows were tinted too dark. According to the complaint, when Mr. Hutcherson sought to prove the legality of that tinting, Officer Lim ordered him to exit the vehicle and kicked the driver's side door closed on Plaintiff's left leg. Mr. Hutcherson then returned to his seat, whereupon Officer Lim allegedly reached into the vehicle's window and twisted Mr. Hutcherson's arm, pressing it against the driver's side door. According to the complaint, Plaintiff Sharon Hutcherson, who by this time had arrived at the scene, then demanded Officer Lim release her husband from his grip. The officer allegedly relinquished Plaintiff's arm, subsequently writing and issuing a citation for illegal tints.

After Officer Lim failed to appear at the court hearing on the citation, the citation was dismissed. Thereafter, on October 21, 2008, Plaintiffs filed their complaint.

## II. STANDARD OF REVIEW

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) challenges a court's authority to entertain a suit on grounds of subject matter jurisdiction. When faced with a Rule 12(b)(1) motion, the Court must accept factual allegations as true and construe them in the light most favorable to the plaintiffs, relying solely on the pleadings. *Star Scientific Inc. v. R.J. Reynolds Tobacco Co.*, 174 F. Supp. 2d 388, 391 (D. Md. 2001). The Court will grant a 12(b)(1) motion only "if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir.1991).

Alternatively, a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the sufficiency of the complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 (2007), the Supreme Court declared the "retirement" of the long-cited "no set of facts" standard first announced in *Conley v. Gibson*, 355 U.S. 41, 45 (1957).[1] The Court in *Twombly* looked instead to whether the Petitioner alleged "enough facts to state a claim to relief that is plausible on its face," *id.* at 570, observing that "plaintiff's obligation to provide grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," *id.* at 554 (internal quotations omitted). In sum, "factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555.

When faced with a Rule 12(b)(6) motion, the Court must consider all well-pled allegations in a complaint as true, *see Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe factual

---

[1]*Conley* stated that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the Petitioner can prove no set of facts in support of his claims which would entitle him to relief." 355 U.S. at 45-46.

allegations in the light most favorable to the plaintiff, *see Lambeth v. Bd. of Comm'rs of Davidson County*, 407 F.3d 266, 268 (4th Cir. 2005). Nevertheless, the Court is not required to accept as true "a legal conclusion couched as a factual allegation," *Papason v. Allain*, 478 U.S. 265, 286 (1986), conclusory allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979), or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences," *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (internal quotations omitted).

## III. DISCUSSION

WMATA operates the public transit system in the Washington, D.C., metropolitan area. It was created by an interstate compact among the Commonwealth of Virginia, the State of Maryland, and the District of Columbia in 1966. Md. Code Ann., Transp. § 2 (West 2009). Under the Compact, WMATA has the authority to establish and maintain a transit police force in connection with its transit operation. *Id.* § 76.

As a governmental agency, WMATA enjoys immunity from certain civil suits. *Id.* § 80. Specifically, "[t]he Authority shall be liable . . . for its torts and those of its Directors, officers, employees and agents committed in the conduct of any proprietary function, in accordance with the law of the applicable signatory (including rules on conflict of laws), but *shall not be liable for any torts occurring in the performance of a governmental function*." *Id.* (emphasis added). Thus, for this Court to have jurisdiction over Defendant, the actions giving rise to the complaint must properly be characterized as "proprietary" as opposed to "governmental" functions. *Id.*; *Smith v. Wash. Metro. Area Transit Auth.*, 290 F.3d 201, 206 (4th Cir. 2002).

When addressing the WMATA Compact, the Fourth Circuit looks to the District of Columbia

Circuit for interpretive aid, striving to maintain consistency between the only two federal circuits likely to preside over WMATA Compact issues. *See Lizzi v. Alexander*, 255 F.3d 128, 134 (4th Cir. 2001). Federal courts in both circuits interpreting the WMATA Compact have adopted certain tests to aid in their determination of which functions are "governmental" and thus immune from suit. *Smith*, 290 F.3d at 207; *Burkhart v. Wash. Metro. Area Transit Auth.*, 112 F.3d 1207, 1216 (D.C. Cir. 1997).

Activities that are "quintessentially governmental" fall within the scope of § 80's grant of immunity. *Dant v. District of Columbia*, 829 F.2d 69, 74 (D.C. Cir. 1987). Such functions have been defined as those activities exclusively within the purview of the government by way of its legal and authoritative nature. *See Dalehite v. United States*, 346 U.S. 15, 59 (1953) (*"*When an official exerts governmental authority in a manner which legally binds one or many, he is acting in a way in which no private person could."); *see also Smith*, 290 F.3d 201 at 207 (holding that the WMATA Compact adopted "the *Dalehite* conception" in its language) (internal quotations omitted). The oft-cited prototypical governmental function as pertains to WMATA is the act of maintaining a police force. *See Martin v. Wash. Metro. Area Transit Auth.*, 667 F.2d 435 (4th Cir. 1981) ("If the operation of a police force is not a governmental function, then a governmental function may not exist.") (internal quotations omitted).

For those activities that are not considered "quintessentially governmental," it must be determined whether the challenged action is "discretionary" or "ministerial." *Burkhart*, 112 F.3d at 1216. Discretionary actions are accorded sovereign immunity; ministerial actions are not. *Id.* The Supreme Court has defined discretionary functions as those activities that involve "an element of judgment or choice" exercised "based on considerations of public policy." *United States v.*

*Gaubert*, 499 U.S. 315, 322, 323 (1991) (internal quotations omitted). Every discretionary function determination thus requires a two-part analysis. *Id.* It must first be determined whether the action in question is discretionary in that it involves a matter of choice. *Id.* If so, it must then be verified that the activity is of the nature intended to be immunized from suit: namely, those decisions "grounded in social, economic, and political policy." *Id.* at 323 (internal quotations omitted). Traditional discretionary functions have been found in actions such as the "[m]aintenance, repair, inspection, and operation of escalators" within WMATA metro stations, *Wash. Metro. Area Transit Auth. v. Barksdale-Showell*, 965 A.2d 16, 23 (D.C. 2009), and "the design of metrorail's farecard system," *Dant*, 829 F.2d at 74.

### A. Claims Arising from the Traffic Stop

Plaintiffs' claims sounding in negligence, assault, intentional infliction of emotional distress, false imprisonment, loss of consortium, and vicarious liability all arise out of the traffic stop in which transit police officer Lim issued Mr. Hutcherson a citation for illegal window tints. Because the issuance of the citation is police activity, which is governmental in nature, WMATA is entitled to sovereign immunity.

The Fourth Circuit has held that it "is firmly established that . . . the operation of a police force is a governmental function." *Martin*, 667 F.2d at 435; *see also Morris v. Wash. Metro. Area Transit Auth.*, 781 F.2d 218 (D.C. Cir. 1986) (holding that the "principle is well-established that the operation of a police force is a governmental rather than proprietary function"). This operation includes those activities undertaken by transit officers "comparable to those executed by their counterparts in the respective jurisdictions." *Hall v. Wash. Metro. Area Transit Auth.*, 468 A.2d 970, 973 (D.C. 1983) (holding WMATA immune from a false arrest claim filed by a WMATA

employee accused of embezzling money from a farecard machine). Certainly, the issuance of a citation for illegal window tints is a garden variety police function performed both by WMATA officers and their jurisdictional counterparts. *See Martin*, 667 F.2d at 436 (holding that "[n]othing could be more correctly characterized as police action than enforcement of the law" in ruling on an assault claim stemming from an arrest for inadequate fare payment). Moreover, WMATA's immunity for its operation of a police force includes individual officers' "'acts and omissions in connection therewith . . . .'" *Id.* (quoting Eugene McQuillin, The Law of Municipal Corporations §§ 53.29, 53.30, 53.51 (3rd ed. 1977)); *see also Hawthorne v. Wash. Metro. Area Transit Auth.*, 702 F. Supp. 285 (holding WMATA immune from assault charges brought against its transit police officers as arising under the governmental function of police activity). Consequently, as the activity in question is a governmental function under § 80 of the WMATA Compact, WMATA is entitled to immunity from these claims.

### B.  Claims of Negligent Hiring, Supervision, and Training

Plaintiffs' final claim alleging negligence on the part of WMATA in the hiring, supervising, and training of the officer involved in the dispute does not arise out of police activity and is not a "quintessential governmental function." Hiring, supervision, and training are, however, discretionary matters which also enjoy § 80 immunity.

In *Burkhart*, the District of Columbia Circuit considered a complaint alleging that WMATA had been negligent in the hiring, supervision, and training of its bus driver who was accused of exchanging "a series of blows" with a deaf bus passenger over a failure to pay the appropriate fare. 112 F.3d at 1209. The *Burkhart* court concluded that WMATA enjoys broad discretionary powers in its hiring and supervising process under the Compact. 112 F.3d at 1217. Moreover, the court

determined that the choices the agency faces in this regard are "susceptible to policy judgment" by their very nature. *Id.* (internal quotations omitted). In short, applying the two-part inquiry, the court found that "decisions concerning the hiring, training, and supervising of WMATA employees are discretionary in nature, and thus immune from judicial review." *Id.*

Here, Plaintiff alleges that a WMATA transit police officer assaulted him in the course of issuing a citation for illegal window tints, twisting his arm and slamming his leg in a vehicle door. As a result, he asserts WMATA is liable for negligent hiring, supervision, and training of the officer. Under the facts, the reasoning and conclusion of *Burkhart* applies, thus rendering WMATA immune from this final claim as well.

All of Plaintiffs' claims thus attack "governmental functions" under the meaning of the phrase as used in § 80 of the WMATA Compact, and therefore their Complaint must be dismissed as to WMATA because, on its face, it fails to state a claim upon which relief may be granted.[2]

## IV. CONCLUSION

For the foregoing reasons, the Court will, by separate order, grant Defendant Washington Metropolitan Area Transit Authority's Motion to Dismiss [Paper No. 8].

Date: July 15, 2009                          /s/
                                             ROGER W. TITUS
                                             UNITED STATES DISTRICT JUDGE

---

[2] Officer Lim has been served and answered the complaint, but has not joined Defendant WMATA's motion to dismiss. While WMATA is able to cloak itself with absolute immunity to tort suits, individual officers may not avail themselves of the same privilege under the WMATA Compact. *Griggs v. Wash. Metro. Area Transit Auth.*, 232 F.3d 917, 922 (D.C. Cir. 2000). Whether or not an implicated officer is entitled to immunity is a fact-dependant determination contingent on the nature and scope of the employee's authority and actions. *See Griggs*, 232 F.3d at 922.

determined that the choices the agency faces in this regard are "susceptible to policy judgment" by their very nature. *Id.* (internal quotations omitted). In short, applying the two-part inquiry, the court found that "decisions concerning the hiring, training, and supervising of WMATA employees are discretionary in nature, and thus immune from judicial review." *Id.*

Here, Plaintiff alleges that a WMATA transit police officer assaulted him in the course of issuing a citation for illegal window tints, twisting his arm and slamming his leg in a vehicle door. As a result, he asserts WMATA is liable for negligent hiring, supervision, and training of the officer. Under the facts, the reasoning and conclusion of *Burkhart* applies, thus rendering WMATA immune from this final claim as well.

All of Plaintiffs' claims thus attack "governmental functions" under the meaning of the phrase as used in § 80 of the WMATA Compact, and therefore their Complaint must be dismissed as to WMATA because, on its face, it fails to state a claim upon which relief may be granted.[2]

## IV. CONCLUSION

For the foregoing reasons, the Court will, by separate order, grant Defendant Washington Metropolitan Area Transit Authority's Motion to Dismiss [Paper No. 8].

Date: July 15, 2009                          /s/
                                             ROGER W. TITUS
                                             UNITED STATES DISTRICT JUDGE

---

[2] Officer Lim has been served and answered the complaint, but has not joined Defendant WMATA's motion to dismiss. While WMATA is able to cloak itself with absolute immunity to tort suits, individual officers may not avail themselves of the same privilege under the WMATA Compact. *Griggs v. Wash. Metro. Area Transit Auth.*, 232 F.3d 917, 922 (D.C. Cir. 2000). Whether or not an implicated officer is entitled to immunity is a fact-dependant determination contingent on the nature and scope of the employee's authority and actions. *See Griggs*, 232 F.3d at 922.